IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:17-CR-31-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| RICKY JAY BALL, | ) | |
| | ) | |
| Defendant. | ) | |

On May 4 and May 18, 2020, Ricky Jay Ball ("Ball" or "defendant") moved pro se for compassionate release or home confinement under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 53, 54, 55, 56]. On May 2, 2022, the government responded in opposition [D.E. 64]. As explained below, the court denies Ball's motions for compassionate release.

I.

On September 11, 2017, Ball pleaded guilty without a plea agreement to possession of a firearm and ammunition by a felon (count one), obstruction of justice (counts two and three), and altering a military discharge certificate (count four). See [D.E. 31]. On December 5, 2017, the court held Ball's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 37]; [D.E. 44]. The court calculated Ball's total offense level to be 21, his criminal history category to be V, and his advisory guideline range to be 70 to 87 months' imprisonment. See PSR ¶ 102. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Ball to 96 months' concurrent imprisonment on counts one, two, and three and 12 months' concurrent

imprisonment on count four. See [D.E. 46]. Ball did not appeal.

On April 12, 2020, Ball sent a letter to the court invoking section 12003(b)(2) of the CARES Act and seeking release due to COVID-19. See [D.E. 51]. On April 23, 2020, the court construed the letter as a motion for release under 18 U.S.C. § 3624(c)(2), as amended by section 12003(b)(2) of the CARES Act, and denied the motion. See [D.E. 52]. In May 2020, Ball sent two letters to the court seeking compassionate release or home confinement, which the clerk construed as motions. See [D.E. 53, 54, 55, 56]. In June 2020, Ball sent another letter. See [D.E. 58].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s timing

2

requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's

3

age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. § 1B1.13, cmt. n.2.

On April 13, 2020, Ball applied to his warden for compassionate release, and his warden denied the request. See [D.E. 53] 1; [D.E. 55] 1; [D.E. 64] 4. The government agrees that Ball satisfied section 3582(c)(1)(A)'s threshold timing requirements. See [D.E. 64] 4; cf. Muhammad, 16 F.4th at 130. Accordingly, the court considers Ball's motions on the merits.

In support of his motions for compassionate release, Ball cites the COVID-19 pandemic, the need to assist his mother, his rehabilitation efforts, and his release plan. See [D.E. 53, 54, 55, 56, 58]. As for the COVID-19 pandemic, Ball has not cited any health conditions that place him at a heightened risk of infection. Cf. [D.E. 64] 5, 19. Moreover, Ball is fully vaccinated against COVID-19 and has had and recovered from COVID-19, thereby obtaining natural antibodies. See [D.E. 64] 5, 19–21; [D.E. 65] 112–13; Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021). Receiving the COVID-19 vaccine greatly diminishes Ball's risk of serious infection from COVID-19. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) ("[V]accination does not rule out reinfection, but this does not diminish that vaccination mitigates the risk of COVID-19 complications . . . ."); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("[W]ith access to the vaccine, an inmate largely faces

4

the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021), cert. denied, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Accordingly, the general risk COVID-19 poses to Ball is not an extraordinary and compelling reason for compassionate release. See 18 U.S.C. § 3582(c)(1)(A).

Ball argues the need to care for his mother is an extraordinary and compelling reason justifying compassionate release. See [D.E. 53] 1; [D.E. 54] 2; [D.E. 55] 1; [D.E. 56] 2. Ball's mother has stage 3 kidney failure, and Ball argues she could use his assistance. See [D.E. 53] 1; [D.E. 54] 2; [D.E. 55] 1; [D.E. 56] 2. Under the "family circumstances" policy statement, extraordinary and compelling circumstances may exist because of "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). By its plain terms, the policy statement does not apply to family circumstances involving a defendant's parents. Moreover, Ball does not argue he is his mother's only available caregiver. Thus, Ball's family situation does not fall within the "family circumstances" policy statement. Nonetheless, the court considers Ball's family circumstances under the "other reasons" policy statement.

The court assumes without deciding that COVID-19, Ball's family circumstances, his rehabilitation efforts, and his release plan constitute extraordinary and compelling reasons under the

5

"other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Ball's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Ball is 44 years old and is incarcerated for possession of a firearm and ammunition by a felon, two counts of obstruction of justice, and altering a military discharge certificate. See PSR ¶¶ 1–5. While on a two-year federal probationary sentence, Ball falsely claimed to work for the North Carolina State Bureau of Investigation. See id. ¶ 8. As part of the charade, Ball wore a badge, carried a handgun, and possessed blue lights. See id. ¶¶ 9–11. Ball also possessed an M4 rifle. See id. ¶ 9. Eventually, Ball was charged with violating the terms of his probation. During his probation revocation hearing, Ball submitted a fraudulent discharge document to the court. See id. ¶ 18. The fraudulent document stated Ball received a medical discharge from the U.S. Marine Corps when he actually received an involuntary discharge "due to fraudulent entry from his pre-service criminal record." Id. Ball's serious criminal behavior was nothing new. Before incurring the convictions for which he is currently incarcerated, Ball had convictions for soliciting embezzlement, obtaining property by false pretense (three counts), employment security law violations (four counts), breaking and entering (two counts), larceny, larceny after breaking and entering, possession of a firearm by a felon (two counts), possession of stolen goods (two counts), using a red or blue light, impersonating a law enforcement officer (two counts), common law forgery, and possession of false identification. See id. ¶¶ 28–43. Ball has a poor record on supervision, including engaging in new criminal conduct while on supervision. See id. ¶¶ 29, 33, 36, 43.

6

Ball has taken some positive steps while federally incarcerated. For example, Ball argues he has completed "over 900 class time hours and completed the 12 hour drug education" course. [D.E. 55] 1. Ball states he has taught "over 11 classes including the RE-Entry class and the CDL class." Id. Ball also states he has "become a facilitator" of the North Carolina Alternative to Violence Program and is a "senior mentor for the Each One Reach One Mentorship Program." Id. Ball contends he has had "no disciplinary write ups ever." Id. However, since filing his motions, he incurred an infraction for possessing a hazardous tool—a cell phone. See [D.E. 64] 23; [D.E. 64-1]. The disciplinary report remarks state: "Inmate denied the charge, stating he did not know anything about the false wall or cellphone." Id. The court views the possession of a cell phone in custody as serious misconduct. Cf. United States v. Melton, 761 F. App'x 171, 172–78 (4th Cir. 2019) (per curiam) (unpublished).

The court must balance Ball's mixed performance in federal custody with his serious criminal conduct, his terrible criminal history, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Ball's potential exposure to COVID-19, his family circumstances, and his release plan. See [D.E. 53, 54, 55, 56]. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Ball's arguments, the government's persuasive response, the need to punish Ball for his serious criminal behavior, to incapacitate Ball, to promote respect for the law, to deter others, and to protect society, the court denies Ball's motions for compassionate release. See, e.g., Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

7

As for Ball's requests for home confinement, the court dismisses them. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Simon, No. 20-6701, 2022 WL 337126, at *1 (4th Cir. Feb. 4, 2022) (per curiam) (unpublished); United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021); United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."). To the extent Ball requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Ball's requests for home confinement.

III.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 53, 54, 55, 56] and DISMISSES his requests for home confinement.

SO ORDERED. This 23 day of June, 2022.

JAMES C. DEVER III
United States District Judge